UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | } | |
| | } | |
| V. | } | CRIMINAL ACTION |
| | } | NO. 04-10235-MLW |
| CORY HUBBARD | } | |
| DEFENDANT | } | |

## **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

The defendant, Cory Hubbard, hereby submits this Memorandum of Law in support of his Motion to Suppress Evidence.

## **FACTS**[1]

On February 26, 2004, Detective John R. Ribeiro (Ribeiro) of the New Bedford Police Department applied for a search warrant at the Third District Court, Bristol County. The target of this search warrant was Cory Hubbard, the above-referenced Defendant. The target address was 663 Kempton Street, third floor apartment, New Bedford.

During the week of January 11, 2004, Ribeiro spoke to a first time confidential informant (CI) who stated he had purchased and continues to purchase cocaine from an individual it knows as "Cory". CI described "Cory" as a black male, approximately twenty-five years old, 6'0" tall, weighing 210 pounds, with braided hair. In order to purchase cocaine, CI would call "Cory" on his telephone and request a specific amount of cocaine. "Cory" would then instruct CI to meet at a specific location at a specified period of time. Upon meeting with "Cory", it would give "Cory" a specific amount of money in exchange for cocaine. CI described "Cory" as operating either a white Buick

---

[1] The fact section is based upon the Affidavit in Support of Search Warrant 04-SW-36 submitted by Detective John R. Ribeiro III of the New Bedford Police Department.

Riviera bearing Massachusetts plates or a green Volkswagen Passat station wagon.

Detective Ribeiro performed a computer query where it was learned that a Cory Hubbard lived at 663 Kempton Street, third floor. During the week of January 18, 2004, CI identified the photo image provided by Ribeiro as being Cory Hubbard, the individual it purchases cocaine from. This photograph was produced by the Registry of Motor Vehicles.

During the week of January 18, 2004 through February 26, 2004, Detective Ribeiro and Detective Encarnacao (also of the New Bedford Police Department), conducted surveillance of Cory Hubbard. Throughout this period of surveillance, both officers observed Cory Hubbard operating two different vehicles, a white Buick Riviera and green Volkswagen Passat Wagon. Mr. Hubbard was seen stopping at "various locations usually waiting at crowded business establishments where it would not be uncommon to see people gathered". Mr. Hubbard would meet these person(s) for a "very brief period" before he and the person(s) would separate. Despite not seeing any items being passed or witnessing any other behavior consistent with alleged drug activity, Detective Ribeiro states that this witnessed behavior of Mr. Hubbard's is "consistent with that of a drug delivery service".

These same officers also observed Mr. Hubbard operate the Volkswagen and park it in front of 663 Kempton street. Mr. Hubbard would then walk out of this vehicle and enter this address; the officers then lost sight of Mr. Hubbard. During nighttime surveillance, officers would observe the third floor light being illuminated soon after Mr. Hubbard entered the building. It was also found that the Volkswagen Passat would be parked next to 663 Kempton Street for "prolonged periods of time, including late overnight and early morning periods".

Within seventy-two hours of applying for the search warrant, detective Ribeiro met with CI in order to coordinate a controlled buy. Detective Ribeiro searched the CI and instructed it to make contact with Mr. Hubbard. Detective Ribeiro followed CI to a pre-arranged location that the Defendant allegedly specified. Detective Ribeiro continued to conduct surveillance and await the arrival of Mr. Hubbard. In conjunction with Detective Ribeiro's surveillance, other officers proceeded to 663 Kempton Street to conduct surveillance. The Defendant was seen exiting this building and enter into the

Volkswagen and drive to the specified location.  The Defendant met with the CI and subsequently, the CI produced an unspecified amount of cocaine it allegedly purchased from the Defendant.

Detectives Encarnacao and Simmons followed the Defendant back to 663 Kempton Street, observe him exit the vehicle and enter the address.  Based upon the foregoing information, a search warrant was issued.

## ARGUMENT

I. CONFIDENTIAL INFORMANT

The Fourth Amendment requires that a search warrant be supported by probable cause.  Probable exists "when the affidavit upon which the warrant is founded demonstrates, in some trustworthy fashion, the likelihood that an offense has been committed and there is some sound reason to believe a particular search will turn up evidence of it."  United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996), (quoting United States v. Aguirre, 839 F.2d 854, 857-58 (1st cir. 1988).  A magistrate must look to the totality of the circumstances in the appraisal of probable cause.  See Illinois v. Gates, 462 U.S. 213, 238, 103 Sect. 2317, 2332, 76 L.Ed.2d 527 (1983).  An affidavit supporting a request for a search warrant must give the magistrate a "substantial basis" upon which to conclude that there is such a "fair probability."  Id. At 238-39, 103 S.Ct. at 2332-33.  Gates replaced the two-pronged framework of Aguilar and Spinelli with this totality of the circumstances test.  United States v. Khounsavanh, 113 F.3d 279 (1997).  Despite this "replacement", Aguilar and Spinelli factors, including "an informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report."  Gates, 426 U.S. at 230, 103 S.Ct.at 2328; United States v. Schaefer, 87 F.3d 562 (1st Cir.1996)(the Aguilar and Spinelli factors are "highly relevant" even after Gates).

In this case, a first time informant was used.  Hence, the police are unable to base his reliability on past success.  In order to rectify this deficiency, the law allows the value of corroboration of details of an informant's tip by independent police work.  Illinois v. Gates, 462 U.S. at 241.  Here, the informant had absolutely no track record as an informant.  What information the informant did provide was made up of innocuous details that any person who knew of the Defendant could have provided.

The informant's tip contained the following information: it bought cocaine from a black man named Cory who was approximately twenty years old, 6'0" tall, 210 pounds with braided hair. The informant had a telephone number of the Defendant and would call to arrange drug transactions, which would occur at different locations. The Defendant would be driving either a Volkswagen or Buick. There was no information provided by the CI that revealed any details not known to the casual observer, such as the location of the Defendant's residence, the volume of the Defendant's alleged drug activity, or the location at which the Defendant kept his stash. Also, the CI did not know any of the license plates of the vehicle driven by the Defendant or how long the Defendant was involved in this type of illicit activity. Therefore, it is most certainly a leap to conclude that this type of information provided by the informant meant that it had access to reliable information of…alleged illegal activities. See United States v. Sokolow, 490 U.S. 1, 9-10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

The affidavit attempts to corroborate the information provided by the CI, however it sets forth information that is obvious to any person observing the scene. Specifically, during surveillance of the Defendant, the officers witnessed "Cory" stopping at various locations and would see him "meeting with person or persons". In no way do these observations either bolster or corroborate anything. Moreover, the Gates court did place emphasis on "the value of corroboration…by independent police work." Gates, 462 U.S. at 241. The information provided in the affidavit is not what was contemplated by the Gates court. If for example the CI provided the officers with information such as an upcoming drug transaction involving the Defendant and a third party, or was specific as to any weapons or narcotics and there exact location, then the corroboration aspect of Gates would be satisfied. See United States v. Correa, 154 F.Supp.2d 117.

II. NEXUS OF SEARCH

There must be a nexus between the target location of the search warrant, 663 Kempton Street, third floor apartment and the object of the search. Illinois v. Gates, 462 U.S. 213 (citations omitted). The activities observed by the officers while conducting surveillance does nothing to make the connection between alleged drug activity and the 663 Kempton address. The affidavit does state that the target was seen leaving this address prior to the alleged controlled buy that occurred and return thereafter. Most

importantly is that upon exiting this location, the officers do not observe any sort of suspicious behavior by the Defendant. Further, the officer does not make mention in his affidavit that the Defendant was seen heading to a specific location at this address. Any contraband that might have existed could have been located either on his person, in his car, or at another location altogether. Hence, despite an alleged controlled buy, there remains the absence of a connection with this exact target location.

III. CONCLUSION

At its origin, "[T]he purpose of the Fourth Amendment was to protect people of the United States against arbitrary action by their own government." United States v. Verdugo-Urquidez, 494 U.S. 259, 266, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). This purpose stands true to this day. Allowing search warrants based on the information provided by this first time informant and corroborated by innocuous details allows law enforcement to circumvent the true meaning of the Fourth Amendment. For the foregoing reasons, the Defendant asks this Court to grant his Motion to Suppress.

>
> Respectfully submitted,
> Cory Hubbard,
> By his attorney,
>
>
> /s/ *Frank D. Camera*
> Frank D. Camera
> BBO #635930
> 56 North Main Street #321
> Fall River, MA 02720
> 508-677-2878
> 508-677-2876 fax

Dated: January 21, 2005

CERTIFICATE OF SERVICE

I Frank D. Camera hereby certify that I have served upon Assistant U.S. Attorney

Robert Richardson the following documents: Motion to Suppress, Memorandum of Law and Affidavit by electronic filing on this 21st day of January 2005.

/s/ Frank D. Camera<br>
Frank D. Camera