UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | CRIMINAL NO. 04-10235-MLW |
| ) | |
| CORY HUBBARD    ) | |

                       OPPOSITION OF THE UNITED STATES TO
                 DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER

Defendant Cory Hubbard (the "defendant") has moved this Court for revocation of the order of detention (the "Order") requiring his detention pending the trial of this matter.  For the reasons that follow, the government opposes the motion.

                            **PROCEDURAL BACKGROUND**

On June 22, 2004, a criminal complaint was filed charging the defendant with possession with intent to distribute cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. § 841(a)(1); with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); and with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  The defendant was arrested and had his initial appearance before (now) Chief United States Magistrate Judge Charles B. Swartwood on July 2, 2004.  A combined detention hearing and probable cause hearing ultimately was held on July 15, 2004.  Chief Magistrate Judge Swartwood issued the Order detaining the defendant on July 19, 2004.  On August 11, 2004, a grand jury sitting in Boston, Massachusetts, returned a five-count indictment charging the defendant with the

same offenses alleged in the complaint[1], as well as asserting forfeiture allegations.

The defendant has now moved to revoke the Order.

## THE FACTS

The government called ATF Special Agent Sheila O'Hara and adduced the following information, among other evidence, at the detention hearing.[2]

**The Investigation and Execution of the Search Warrant**

On Saturday, February 28, 2004, detectives from the New Bedford Police Department ("NBPD") Organized Crime and Intelligence Bureau ("OCIB") executed a state search warrant at 663 Kempton Street, 3rd floor, New Bedford, MA. The information for the search warrant was based on Confidential Informant ("CI") information. In substance and among other things, the CI admitted that CI is a user of cocaine and is familiar with the methods to package and prepare this controlled substance for street level sales. The CI stated that he/she had purchased cocaine from a male whom he/she knew as Cory Hubbard (the

---

[1]The indictment charges in three separate counts the defendant's possession of cocaine base, cocaine, and marijuana with intent to distribute. The count concerning cocaine base specifically alleges that the defendant possessed more than 5 grams of said substance with the intent to distribute it.

[2]Specifically, the government introduced, inter alia, the complaint affidavit; the search warrant and search warrant affidavit; and the reports of the chemical analyses of the controlled substances recovered from the defendant's apartment.

2

defendant). The CI described the defendant as a black male, approximately 25 years old, 6 feet tall, weighing approximately 210 pounds, with black braided hair. The CI stated that, in order to purchase cocaine from the defendant, the CI would call him at (774) 930-0286 and request a specific amount of cocaine. The defendant would then instruct the CI as to where to meet. The CI stated that the CI would, upon meeting, give the defendant a specific amount of money in exchange for a specific amount of cocaine. The CI advised that the defendant usually operated a white Buick Rivera or a green Volkswagen Passat station wagon.

Detective John Ribeiro, a member of NBPD OCIB, began an investigation based on the CI's information. Detective Ribeiro obtained a photograph of the defendant and showed it to the CW, who identified the person depicted as the individual the CI knows as Cory Hubbard and from whom the CI had purchased cocaine.

During the week of January 18, 2004, Detective Ribeiro and other members of the NBPD began conducting surveillance of the defendant. During periods of surveillance, detectives observed the defendant operating two different vehicles: a white Buick Rivera and a green Volkswagen Passat station wagon. Members of the NBPD followed the defendant on several occasions as he stopped at various locations, usually waiting at crowded business establishments where it would not be uncommon to see people gathered. The defendant was seen meeting with a person or

persons at such locations.  Most of the meetings were very brief. Such actions are consistent with the operation of a drug delivery service.  The detectives also saw the defendant entering 663 Kempton Street, and, during nighttime surveillance, waited and saw electric lights illuminated on the third floor shortly after the defendant had entered the building.  The detectives learned from NStar that the defendant was listed as the subscriber for utility services in the third-floor apartment of that building.

Within 72 hours of applying for the search warrant on February 26, 2004, the CI made a controlled purchased of cocaine from the defendant.  Detectives observed the defendant leave 663 Kempton Street and travel to a location where the defendant had instructed the CW to meet him.  Detectives observed a brief meeting take place between the defendant and the CI.  Detectives followed the defendant back to 663 Kempton Street.  Detective Ribeiro also kept the CI under constant surveillance between the time he searched the CI and provided the CI with money to make the purchase and the time the CI met the detective at a prearranged location after the meeting with defendant.  Detective Ribeiro recovered a substance from the CI at the prearranged location which field-tested positive for cocaine.

Detective Ribeiro subsequently obtained the search warrant and, on Saturday, February 28, 2004, OCIB detectives executed it at the defendant's apartment at 663 Kempton Street.  Detectives

seized one bag of suspected powder cocaine weighing approximately 21.54 grams, which subsequently tested positive for the presence of cocaine, three bags of suspected crack cocaine weighing approximately 8.99 grams, which subsequently tested positive for cocaine base, and two digital scales, all located in a small opening over a kitchen cabinet; nine bags of suspected powder cocaine weighing approximately 6.98 grams, which subsequently tested positive for the presence of cocaine, located under the sofa cushions in the living room; five bags of suspected crack cocaine weighing approximately 14.53 grams, which subsequently tested positive for the presence of cocaine base, located in the drop-ceiling tiles in the bathroom; 17 bags of suspected marijuana weighing approximately 1 pound, which subsequently tested positive for marijuana, located in a kitchen cabinet; a Glock, model 23, .40 caliber semi-automatic pistol, serial number BNM315US, loaded with eight rounds of ammunition, located in a sneaker box along the west wall of the bedroom; and $10,552 in U.S. currency, two police scanners, an apparent drug ledger, and a can of Acetone, also located in the bedroom.  Detectives also seized a quantity of paperwork, identification and bills bearing the defendant's name and the 663 Kempton Street apartment address.

**The Defendant's Criminal History**

The defendant appears to be both a career offender and an

Armed Career Criminal ("ACC").

Specifically, the defendant was convicted, among other things, of various counts of possession of class A, class B, and class D controlled substances with intent to distribute in New Bedford District Court on September 21, 1998. It appears that, notwithstanding that these counts were consolidated for plea and sentencing, they nonetheless qualify as at least two convictions for career offender purposes. Court records indicate the date of complaint and arrest was 10/6/97 for one group of offenses while the date of complaint and arrest for the other group was 11/13/97. It thus appears that the two groups of counts are separated by an intervening arrest and should thus be scored separately under the guidelines. See U.S.S.G. §4B1.1(a)(defining controlled substance offenses as career offender predicates); U.S.S.G. §4A1.2, comment. (n. 3)(excluding from definition of "related cases" sentences arising from offenses separated by an intervening arrest).

The defendant also has, among other things, a juvenile adjudication for assault with a dangerous weapon, to wit, a gun, sustained in the Brockton Juvenile Court on September 9, 1993. Even though this is not an adult conviction, it nonetheless appears to be an ACC predicate, given that the relevant definition includes "any act of juvenile delinquency involving the use or carrying of a firearm . . . that would be punishable

6

by imprisonment for [a term exceeding one year] if committed by an adult that . . . has as an element the use, attempted use, or threatened us of physical force against the person of another . . . ." See 18 U.S.C. § 924(e)(2)(B)(i).

### **ARGUMENT**

As Chief Magistrate Judge Swartwood correctly observed, the relevant factors in determining whether the defendant should be detained are: (1) the nature and circumstances of the offense, including whether it is a crime of violence or involves drugs; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to the community were the defendant to be released. Order at 8; see 18 U.S.C. § 3142(g). Based on a consideration of these factors, this Court should deny the defendant's motion to revoke the Order.

To begin with, there is a presumption that the defendant should be detained, based on at least two statutory presumptions. First, there is a rebuttable presumption that no condition ro combination of conditions will reasonably assure the appearance of a defendant and the safety of the community if there is probable cause to believe the defendant has committed an offense carrying a potential term of imprisonment of ten years or more under 21 U.S.C. § 801 et seq. See 18 U.S.C. § 3142(e). The grand jury has indicted the defendant for three such offenses.

Second, there is a rebuttable presumption in favor of detention if there is probable cause to believe a defendant has violated 18 U.S.C. 924(c). 18 U.S.C. § 3142(e). The grand jury has indicted the defendant for such an offense. See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). While these presumptions do not shift the burden of proof but instead the burden of production to the defendant, they do not "burst" upon the production of some evidence by the defendant but instead retain evidentiary weight. E.g., United States v. Jessup, 757 F.2d 378, 381-82 (1st Cir. 1985).

These presumptions not only do not burst in the face of the defendant's proffered conditions of release but rather are fully warranted in a case such as this. As Chief Magistrate Judge Swartwood found in the Order, there is strong evidence that the defendant committed the offenses with which he is charged. Order at 9 (characterizing weight of evidence as "substantial"). The powerful evidence that the defendant possessed significant quantities of three separate controlled substances with the intent to distribute them, and further possessed a loaded firearm in close proximity both to the drugs and to the apparent proceeds of the sale thereof, reveals the defendant's conduct to be precisely the sort from which Congress sought to protect the public in enacting the Bail Reform Act and creating these statutory presumptions in favor of detention.

The current charges do not, moreover, represent the defendant's only forays into conduct of this sort. As noted previously, the defendant was convicted of a number of similar drug offenses in state court in 1998. Indeed, as noted above, it appears that the defendant committed some of these drug crimes while out on release pending trial on other drug crimes. While it appears that too much time may have passed since the defendant's release from jail on these charges for yet another statutory presumption in favor of detention to apply[3], the timing of these offenses nonetheless is relevant to the calculus. Specifically, the fact that the defendant has in the past been released when facing serious drug charges and has gone on to commit further, equally serious drug offenses while on release

---

[3] 18 U.S.C. § 3142(e)(1)-(3) provides for a rebuttable presumption in favor of detention if a defendant has a prior conviction for a qualifying drug offense; that offense was committed while the defendant was on release pending trial in state or federal court; and fewer than five years have elapsed since the defendant's conviction of, or release from prison on, such offense. Here, as noted previously, the defendant apparently committed and was arrested for some of the drug offenses with which he was charged in New Bedford District Court on November 13, 1997 while he was pending trial on similar offenses with which he had been charged on October 26, 1997. The defendant received a one-year committed sentence on one of the November cases on September 21, 1998. Assuming he was released from jail no later than one year after that, it appears that more than five years have elapsed since such release, which may put the conviction beyond the ambit of the presumption. (Of course, if, despite the literal language of the statute, the operative date from which one calculates the five-year reach-back is not the date upon which this Court decides the defendant's motion but instead is the date the defendant was charged federally, then the presumption may apply.)

confirms what is inherent in the presumption: that he would pose an undue danger to the community if released.

The presumption that the defendant is a risk of flight is also warranted under the facts and circumstances of this case. As an ACC, the defendant is facing a minimum mandatory term of imprisonment of fifteen years if convicted of the crime of being a felon in possession of a firearm. See 18 U.S.C. § 924(e)(1). The defendant is also facing a statutory minimum mandatory sentence of five years if convicted of the 924(c) charge, which must be imposed to run consecutively to any other term of imprisonment imposed. See 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(D)(ii). Moreover, if, as suggested above, the defendant proves to be a career offender, the defendant's guidelines sentencing range for the 924(c) count alone (which, the government recognizes, is now advisory) is 360 months to life. See U.S.S.G. §4B1.1(c)(3).

In short, the defendant is facing, in a fairly straightforward case, the real prospect of receiving a sentence of several decades, which is many orders of magnitude greater than the sentences he has received in the past. He accordingly has a powerful incentive to flee, notwithstanding his ties to the area. See Order at 12 (declining to find the defendant a risk of flight apart from the unrebutted statutory presumptions).

Added to this is a record of defaults that, at a minimum,

evinces a casual attitude on the part of the defendant toward his obligations to attend court.  This attitude is apparent even with respect to much more trivial cases, in which the defendant's reluctance to appear as required is particularly troublesome.  For example, the defendant's record shows warrants issued regarding an October 2001 case in New Bedford District court in which the defendant was charged with operating after revocation of his license and leaving the scene of property damage.  Similarly, warrants issued with respect to October 1998 charges pending against the defendant in the same court for failure to obey a police officer, operating after a license revocation, and a compulsory insurance violation.  And, while the case ultimately was dismissed, the defendant defaulted on January 2001 charges in New Bedford District Court for assault and battery, assault and battery with a dangerous weapon, intimidation, breaking and entering (apparently a motor vehicle), and use without authority.  This pattern of defaults and warrants in cases where the defendant had far less at stake than he does here simply reinforces that, given the potential sanctions confronting the defendant now, no conditions of release would adequately assure his appearance in court.

**CONCLUSION**

For the foregoing reasons, this Court should deny the defendant's motion to revoke the Order.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Robert E. Richardson
Robert E. Richardson
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

Suffolk, ss.                                   Boston, Massachusetts
                                               February 4, 2005

I hereby certify that a true copy of the foregoing was served by electronic filing upon counsel for the defendant, Frank D. Camera, Esq., 56 N. Main Street, Suite 321, Fall River, MA 02720.

/s/ Robert E. Richardson
Robert E. Richardson
Assistant U.S. Attorney