```
            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10235-MLW |
| ) | |
| **CORY HUBBARD** ) | |

### OPPOSITION OF THE UNITED STATES TO
### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant Cory Hubbard (the "defendant") has moved this Court for the suppression of evidence.  Specifically, the defendant argues that the search warrant issued in this case was not supported by probable cause because the information from a confidential informant that the defendant was dealing drugs was insufficiently corroborated.  The defendant also argues that the affidavit submitted in support of the search warrant did not establish a sufficient nexus between the defendant's criminal activity and the place to be searched (the defendant's apartment).  For the reasons that follow, the defendant's motion to suppress evidence should be denied.

### FACTS

On February 26, 2004, members of the New Bedford Police Department ("NBPD") obtained a warrant to search the apartment of the defendant[1], located on the third floor of 663 Kempton Street in New Bedford, for controlled substances, including specifically cocaine; equipment used in manufacturing, processing, or

---

[1] The police also obtained a warrant to search a green Passat the defendant was operating during the relevant time period.

delivering controlled substances; records used in manufacturing, processing, or distributing controlled substances; and monies derived from the sale or distribution of controlled substances. The search warrant and the affidavit submitted in support thereof are annexed as Attachment A hereto.[2]  Investigators executed the search warrant on Saturday, February 28, 2004.  They seized one bag of suspected powder cocaine weighing approximately 21.54 grams, which has since tested positive for the presence of cocaine, three bags of suspected crack cocaine weighing approximately 8.99 grams, which has since tested positive for cocaine base, and two digital scales, all located in a small opening over a kitchen cabinet; nine bags of suspected powder cocaine weighing approximately 6.98 grams, which has since tested positive for the presence of cocaine, located under the sofa cushions in the living room; five bags of suspected crack cocaine weighing approximately 14.53 grams, which has since tested positive for the presence of cocaine base, located in the drop-ceiling tiles in the bathroom; 17 bags of suspected marijuana weighing approximately 1 pound, which has since tested positive for marijuana, located in a kitchen cabinet; a Glock, model 23, .40 caliber semi-automatic pistol, serial number BNM315US, loaded

---

[2]The month and day of the defendant's birth, the first five digits of his social security number, and identifying information regarding the individual to whom the green Passat was registered, have been redacted.

with eight rounds of ammunition, located in a sneaker box located along the west wall in the bedroom; and $10,552 in U.S. currency, two police scanners, an apparent drug ledger, and a can of Acetone, also located in the bedroom.  Detectives also seized a quantity of paperwork, identification and bills bearing the defendant's name and the 663 Kempton Street apartment address.

The affidavit in support of the warrant was executed by NBPD Detective John R. Ribeiro, a member of the NBPD Organized Crime Intelligence Bureau ("OCIB").  The affidavit set forth, <u>inter alia</u>, the following information.

As of the date of the search warrant application, Detective Ribeiro (the "detective") had had extensive training and experience in the investigation of narcotics cases.  As a result, the detective was familiar with various controlled substances and how the are prepared, packaged, and distributed.

During the week of January 11, 2004, the detective spoke with a first-time informant, an admitted user of cocaine, regarding a man who was operating a cocaine delivery service in New Bedford (the "CI" or "it").  The CI told the detective that it had purchased and continued to purchase cocaine from a person known to it as Cory Hubbard ("Cory").  The CI said that it would call a particular number to reach Cory and request a specific amount of cocaine; that Cory would provide the CI with a place and time for the transaction; that Cory would thereafter sell

3

cocaine to the CI at the prearranged time and place; and that Cory on occasion operated either a white Buick Rivera or a green Volkswagen Passat.

The detective consulted NBPD computer records and located information regarding the defendant, including information that the defendant lived on the third floor of 663 Kempton Street. The detective contacted N-STAR Gas and Electric and determined that the defendant was listed as the utility subscriber for that apartment.  During the week of January 18, 2004, the detective showed a digital picture obtained through the Registry of Motor Vehicles to the CI, who said that it depicted the person it knew as Cory Hubbard and from whom it bought cocaine.

During the week of January 18 and up to the time of the warrant application, the detective and a fellow detective conducted surveillance of the defendant.  They observed the defendant operating both a white Buick Rivera and a green Volkswagen Passat.  They followed the defendant on several occasions as he stopped in various crowded locations, where he would then meet with one or more persons, usually for very brief periods of time.  According to the detective, such conduct is consistent with a person engaged in a drug delivery service who wishes to prevent raising suspicion on the part of neighbors or the police.

During the surveillance, the detectives also saw the

defendant operating and parking the Passat in front of 663 Kempton Street. During nighttime surveillance, the detective saw the defendant enter 663 Kempton Street and, shortly thereafter, saw a light on the third floor turn on. The detectives also saw the Passat parked next to 663 Kempton Street for extended periods of time, including overnight.

Within 72 hours of the search warrant application, the CI made a controlled purchase of cocaine from the defendant. The detective met with the CI beforehand and searched it to make sure that the CI had neither currency nor contraband on its person. The CI contacted the defendant in the detective's presence and arranged the purchase of cocaine. The detective then provided the CI with currency and kept the CI under surveillance as it proceeded to the location to which the defendant had directed it.

Meanwhile, before the CI contacted the defendant, other NBPD detectives began conducting a surveillance of 663 Kempton Street. The defendant was watched as he left the building, got into the Passat, and traveled to the meeting with the CI. Detectives saw the defendant meet there briefly with the CI and then leave in the Passat, proceeding directly back to 663 Kempton Street, where he got out of the Passat and reentered the building.

The detective followed the CI from the meeting with the defendant to a prearranged location. The CW gave the detective a quantity of cocaine that it said it had just purchased from the

defendant.  The detective searched the CW again and discovered no currency or further contraband.

The detective took the cocaine back to the NBPD, where a field test revealed the presence of cocaine.

**ARGUMENT**

**I.   THE SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE**

The defendant maintains that the information provided by the CI that the defendant was selling cocaine was insufficient to establish probable cause.  More particularly, the defendant argues that, because the CI was a first-time informant, his reliability could not be established by a past track record, and that the police did not otherwise sufficiently corroborate the CI's information.  As shown below, this argument is without merit.

Probable cause to conduct a search exists when evidence establishes the likelihood that an offense has been committed and that there is sound reason to believe a particular search will turn up evidence of the offense or contraband. United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997).  The probable cause standard does not require that this belief necessarily be correct, or even that it be more likely true than not. United States v. Feliz, 182 F.3d 82, 87 (1st Cir. 1999).  As the First Circuit explained in United States v. Melvin, 596 F.2d 492, 495 (1st Cir. 1979):

> [A]ppellant reads the phrase "probable cause" with emphasis on the word "probable," and would define it mathematically to mean "more likely than not" or "by a preponderance of the evidence." This reading is incorrect. The phrase is less stringent than that[;] the words "reasonable cause" are perhaps closer to what is meant.

The Supreme Court, moreover, has been clear that a review of a magistrate's determination of probable cause must be extremely deferential:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." [Cite omitted]. "A grudging or negative attitude by reviewing courts toward warrants," [cite omitted], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. "Courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." [Cite omitted].
>
>     . . . Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. [Cites omitted].

Illinois v. Gates, 462 U.S. 213, 236 (1983).

Here, it is only by adopting the grudging, negative attitude eschewed by the Supreme Court that Detective Ribeiro's search warrant affidavit could be found lacking. Detective Ribeiro (and, by extension, the magistrate) did not simply take the word

of the CI that the defendant was selling drugs.  The detective instead took pains to corroborate what the CI told him.  The detective corroborated that, as the CI said, the defendant drove both a Passat and a Buick.  The detective corroborated that the defendant's conduct – meeting with individuals for short periods of time in areas where he would not arouse suspicion – was consistent with the operation of a drug delivery service.  Most importantly, the detective corroborated, by means of the controlled purchase, that the defendant was, in fact, selling cocaine.

In this respect, the case is analogous to Khounsavanh.  In that case, a CI had told the police that two men were selling and storing crack cocaine from a particular apartment.  The police used the CI to make a controlled buy.  The First Circuit, while declining to adopt a per se rule that a controlled purchase is sufficient to establish probable cause, nonetheless found probable cause under the totality of the circumstances. Khounsavanh, 113 F.3d at 279.  In so doing, the First Circuit stated:

> While all these facts did not corroborate each other with certainty, the combination of facts "'reduced the chances of a reckless or prevaricating tale,' [and] thus provid[ed] 'a substantial basis for crediting the hearsay.'" [Citing Gates, 462 U.S. at 244-45].  Taken together, these facts were sufficient to give the magistrate a "substantial basis" upon which to conclude that there was a "fair probability that contraband or evidence of a crime [would] be found" in the apartment. [Citing Gates, 462 U.S. at 238].

The First Circuit also cited an earlier decision, <u>United States v. Garcia</u>, 983 F.2d 1160 (1st Cir. 1993), in which a single controlled purchase similarly was employed to corroborate a CI's claims regarding drug-dealing.  See <u>Khounsavanh</u>, 113 F.3d at 286.

Here, the defendant claims that "the information the informant did provide was made up of innocuous details that any person who knew of the Defendant could have provided."  Def. Mem. at 3.  The government respectfully disagrees.  First, the CI told the police that the defendant was actively selling drugs, hardly an innocuous detail.  Second, the controlled buy served to corroborate precisely the illegal conduct that was at the heart of the investigation and the target of the search.  In the words of the First Circuit:

> The corroboration of the informant's story did not consist merely of corroborating some innocent facts that any number of people might know.  This was corroboration of the very criminal activity which the police were investigating . . . .

<u>Khounsavanh</u>, 113 F.3d at 287.[3]

Moreover, other aspects of the information set forth in the

---

[3] Indeed, in terms of corroborating the defendant's involvement in the criminal activity at issue, the controlled buy here was superior to that in either <u>Khounsavanh</u> or <u>Garcia</u>.  In each of those cases, the police were able to observe the informant only as he entered and left the suspect's building but could not confirm that the informant entered the particular apartment at issue.  Here, the police were able to observe that the person with whom the CI met was, in fact, the defendant.

search warrant affidavit tend further to corroborate the CI's information and thus to establish probable cause. First, the affidavit indicates that the CI told Detective Ribeiro at the outset that he had purchased cocaine from the defendant. A magistrate could readily and appropriately conclude that this statement against penal interest helped to corroborate the defendant's other information regarding defendant's drug dealing. See, e.g., United States v. Harris, 403 U.S. 573, 583-84 (1971).

Second, the fact that the CI was willing not only to provide information but also to assist actively by making the controlled buy, while not eliminating the risk that the CI was prevaricating, certainly rendered such a scenario unlikely. As the Second Circuit stated in United States v. Wagner, 989 F.2d 69, 73 (2d Cir. 1993):

> Applying the common-sense, totality-of-the-circumstances test set forth in Gates, it was reasonable for the issuing judge to conclude that the CI's information as set forth in the affidavit was truthful. While there is always a possibility that an informant has concocted his story while pretending to cooperate in order to harass an innocent or curry favor with the police, our common sense tells us that in circumstances such as those presented in this case, where the CI made eight drug purchases under government supervision, it is far more likely than not that such deception is absent.

See also, e.g., United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995)(finding that circumstances sufficiently established veracity where informant made observations regarding marijuana

cultivation inside buildings in context of controlled surveillance confirming access to defendant's buildings, and where informant unlikely to be untruthful because, if warrant issued, any "lies would be discovered in short order and favors falsely curried would dissipate rapidly"); Khounsavanh, 113 F.3d at 286 (the informant offered to make a purchase "knowing that, if he was lying, he would be found out relatively quickly").

Third, the detective's affidavit, in the portion seeking a "no knock" warrant, indicates that the defendant had prior drug convictions, a relevant factor in assessing the CI's information. See United States v. Dauphinee, 538 F.2d 1, 5 (1st Cir. 1976)(search subject's record of violent crime a factor which, in conjunction with other indicia of subject's propensities and associations, would properly have influenced decision that probable cause existed to issue warrant).

In sum, the totality of the circumstances presented in the detective's affidavit, when viewed in a in a commonsense fashion, plainly established probable cause to believe that the defendant was actively engaged in selling cocaine.

## II.   **THE AFFIDAVIT ESTABLISHED A SUFFICIENT NEXUS**

The defendant next argues that the search warrant affidavit did not establish a sufficient nexus between the defendant's drug dealing and his third-floor apartment. Def. Mem. at 4-5. The government again disagrees.

11

The nexus requirement is satisfied if the totality of the circumstances presented in the affidavit establish a "fair probability" that the items sought will be found in the locations at issue.  See Gates, 462 U.S. at 238.  "The probable-cause nexus between enumerated evidence of the crime and the place to be searched 'can be inferred from the type of crime, the nature of the items sought, the extent of the opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime].'"  United States v. Ribeiro, ___ F.3d ___, No. 03-2218 (1st Cir. Feb. 8, 2005), Slip Op. at 14 (citing United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979)).

Here, as noted above, the affidavit established that, according to the CI, the defendant was selling cocaine regularly and was using both a white Buick and a green Passat in this endeavor.  The affidavit established that detectives confirmed the defendant was driving both vehicles.  The affidavit established that NBPD records indicated the defendant's address was 663 Kempton Street; utility records confirmed that he was the third-floor subscriber for services at that address; and police surveillance confirmed that he was entering and leaving that location.  The affidavit established that the green Passat was being left near the defendant's building, including overnight.  The affidavit established that, at the time of the controlled purchase, the CI was able to contact the defendant, order the

12

cocaine, and then meet to consummate the purchase, all apparently within a relatively short period of time.[4]  And, of perhaps most importance for these purposes, detectives observed the defendant leave 663 Kempton Street after he had set up the transaction with the CI; they saw him get into the Passat and drive directly to the location for the meeting with the CI; and, after the very brief meeting between the defendant and the CI, detectives followed the defendant directly back to 663 Kempton Street, where he exited the car and went back into the building.

From all of this, the magistrate could reasonably conclude that the defendant was, as the CI said, selling cocaine; that he was using the Buick and the green Passat to make the deliveries; and that he was using his Kempton Street apartment as his home base.  The magistrate could further reasonably infer that, while some evidence of the defendant's drug dealing might well be found in the Passat (given that it was this vehicle in particular he appeared to be using at the time of the very recent controlled buy), the defendant would be unlikely to store either valuable drugs or the proceeds of his sales in the car, where they would be vulnerable to predation by rival drug dealers, customers, and

---

[4]The affidavit does not explicitly recite the time period involved.  It can reasonably be inferred, however, that the detective searched the CI at the outset; the call was made to set up the purchase; the defendant was able to accommodate the order and provided a place for the sale; the CI was provided with the "buy money"; and he proceeded to the locations prescribed for the transaction; all in relatively short order.

anyone else who might happen to break in.  The magistrate could reasonably infer that, instead, the defendant would be likely to keep the drugs and money, as well as the other accouterments of his drug trade, in a secure location that he could more easily protect, i.e., his apartment.

To be sure, not every criminal case gives rise to probable cause to search a suspect's residence.  Feliz, 182 F.2d at 88.  On the other hand, "[t]he nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation . . . ."  Id.  Particularly in cases involving drug dealing, there often will a fair inference that evidence will be found in the suspect's home even without direct observations.

In Feliz, for example, the police had information that the defendant was a long-time drug dealer.  The police supervised two controlled drug purchases from the defendant, one of which occurred in his vehicle and the other of which occurred outside a gym.  Approximately three months later the police received some information from a cooperating defendant that, at around the same time as the controlled purchases, the defendant, who sold cocaine, had discussed buying a kilogram of cocaine from the cooperator.  The police located the defendant's apartment and prepared an affidavit that contained the aforementioned information, as well as information based on the affiant's

experience and training that drug dealers often keep drug ledgers and money in their residences. The district court, confronted with a motion to suppress the fruits of a search of the defendant's apartment, agreed with the defendant that the affidavit did not establish the requisite nexus between the drug dealing and the defendant's apartment, but nonetheless upheld the search under the good-faith exception recognized in United States v. Leon, 468 U.S. 897 (1984). On appeal, the First Circuit reversed the determination that probable cause was lacking. In addition to noting that the magistrate could accord some weight to the affiant's experience and opinions, the First Circuit observed that it was reasonable for the issuing magistrate to infer that a long-time drug dealer would have records relating to his drug dealing and large sums of money derived therefrom in a safe yet accessible place; further observed that the affidavit identified the apartment as the defendant's residence and made no mention of any other residence or drug-dealing headquarters; and queried, "[i]f he did not maintain his accouunts and records, and the presumably large sums of money received in the course of his dealings, at his apartment, where else would he keep them?" Feliz, 182 F.3d at 87-88. In the course of discussing the issue, the First Circuit cited with approval cases from other circuits confronting similar circumstances and reaching the same result. See United States v. Angulo-Lopez, 791 F.2d 1394 (9th Cir. 1986);

15

<u>United States v. Thomas</u>, 989 F.2d 1252 (D.C. Cir. 1993); <u>United States v. Williams</u>, 974 F.2d 480 (4th Cir. 1992); <u>United States v. Cruz</u>, 785 F.2d 399 (2d Cir. 1986).

The First Circuit very recently confronted again, and rejected, an argument in a drug case that there was an insufficient nexus between a defendant's drug dealing and his home.  In <u>Ribeiro</u>, the search warrant affidavit established the defendant's residence and the fact that a CI had made three controlled buys of ecstasy from the defendant, apparently at a location other than his home.  The affidavit further established that an undercover detective made four additional controlled buys from the defendant at a local restaurant.  On the first of these four occasions, the police saw the defendant leave his home in a car and then arrive at the sale location seven minutes later, but did not keep him under surveillance in the interim.  The second time, the police did not see the defendant's car outside his home at the time the buy was set up but instead saw the defendant arrive at the restaurant in the car.  The third time, after the deal was set up, the police saw the defendant, a woman, and a baby get into the defendant's car outside his home.  The police followed him for a short distance but then lost him.  A short while later, the police saw him arrive at the restaurant, still in the company of the woman and the baby.  On the final occasion, the police were able to follow the defendant all the way from his

home to the meeting place. The police provided this information, together with expert knowledge of the affiant that drug dealers often maintain records and monetary instruments in readily accessible locations such as their residences, in support of an application to search the home for documents and drug distribution paraphernalia.[5] The First Circuit determined, based on the totality of the circumstances presented, that a sufficient nexus existed. See Ribeiro, Slip Op. at 19.

Here, there was one controlled buy rather than four, and the detective did not aver that, generally, drug dealers often store drugs and associated items in readily accessible places such as their homes. Nonetheless, the evidence presented that the defendant was engaged in the ongoing business of selling drugs, the evidence that the defendant lived at the location to be searched, the evidence that one of the cars involved in the drug-dealing was kept near this residence, and the tight connection between the defendant's apartment and the controlled buy, all supported a determination by the magistrate that evidence of the drug business, including drugs themselves, would be found in the defendant's home.

---

[5]For reasons that are not clear from the record, the prosecutor who assisted in the preparation of the search warrant application did not think the information sufficient to support a search for the drugs themselves. See Ribeiro, Slip Op. at 17.

17

**III. THE POLICE RELIED IN GOOD FAITH ON THE SEARCH WARRANT**

Even assuming <u>arguendo</u> that probable cause was lacking and/or the nexus between the defendant's drug dealing and his apartment was insufficiently established, the defendant's motion to suppress evidence should still be denied.

In <u>Leon</u>, 468 U.S. 897, the Supreme Court held that, in most cases, the invalidity of a warrant should not serve to suppress the fruits of the subsequent search when the officer acted in objective good faith in executing the warrant.  <u>Leon</u>, 468 U.S. at 922.  Here, given cases such as <u>Khounsavanh</u>, <u>Garcia</u>, and <u>Feliz</u>, the affidavit plainly was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable".  <u>See</u> <u>United States v. Brunette</u>, 256 F.3d 14, 19 (1st Cir. 2001), citing <u>Leon</u>, 468 U.S. at 923.  Nor is it a case in which the record discloses that the magistrate was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth."  <u>Id</u>.  And there is no suggestion that the magistrate "abandoned [her] detached and neutral role".  <u>Leon</u>, 468 U.S. at 926; <u>see</u> <u>also</u> <u>United States v. Robinson</u>, 359 F.3d 66, 69 (1st Cir. 2004).

In short, the NBPD relied in good faith on a facially valid warrant, and the defendant's motion accordingly should be denied.

**IV.   THE MOTION SHOULD BE DENIED WITHOUT A HEARING**

A criminal defendant is not entitled, as a matter of right, to an evidentiary hearing on every motion that he chooses to file. United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." Id. at 603.  In particular, evidentiary hearings on motions to suppress are required only when a defendant makes a sufficient showing that an illegal search has occurred. United States v. Lewis, 40 F.3d 1325 (1st cir. 1994).  "To make this showing the defendant must allege facts, sufficiently definite, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." Id.

Here, the defendant has failed to meet this standard.  In support of his claim that the search of the apartment was unconstitutional, the defendant supplies no affidavit containing any facts, much less facts establishing his entitlement to suppression. See United States v. Gomez, 770 F.2d 251, 253 (1st Cir. 1985)(defendant has burden in motion to suppress to establish reasonable expectation of privacy/standing).  Instead, the defendant simply provides an affidavit of counsel expressing the legal opinion that the search warrant was issued in violation of the Fourth Amendment.

19

Accordingly, the uncontroverted essential facts, as set forth above, establish that the motion is without merit, and the Court should thus deny it without a hearing.

## CONCLUSION

For the foregoing reasons, this Court should deny the defendant's motion to suppress evidence.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By: /s/ Robert E. Richardson
>     Robert E. Richardson
>     Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

Suffolk, ss.                                   Boston, Massachusetts
                                               February 11, 2005

I hereby certify that a true copy of the foregoing was served by electronic filing upon counsel for the defendant, Frank D. Camera, Esq., 56 N. Main Street, Suite 321, Fall River, MA 02720.

> /s/ Robert E. Richardson
> Robert E. Richardson
> Assistant U.S. Attorney