```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

**UNITED STATES OF AMERICA** )
)
    **v.** )   CRIMINAL NO. 04-10235-MLW
)
**CORY HUBBARD** )

<u>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**</u>
<u>**SUPPLEMENTAL DISCOVERY MOTION**</u>

The government respectfully submits its opposition to the defendant's Supplemental Motion for Discovery (the "Motion"). In said motion, the defendant has sought additional discovery of information that, he contends, will assist him in challenging the search warrant leading to the recovery of a firearm, drugs, and other evidence from his New Bedford apartment. Specifically, the defendant seeks impeachment material regarding the confidential informant ("CI") referred to in the search warrant affidavit, as well as impeachment material regarding "any law enforcement agent providing information in connection with the search warrant affidavit . . . ." Motion at 1-2. This is the second such discovery request the defendant has made, this one coming several months after he filed his motion to suppress evidence and his first motion seeking discovery. For the following reasons, the Motion should be denied.

<u>**FACTS**</u>

The government respectfully incorporates by reference herein the statement of facts set forth in its supplemental opposition to the defendant's original discovery motion.

**ARGUMENT**

I. **THE MOTION IS UNTIMELY**

The Local Rules provide that a request for discovery should be made within 42 days after arraignment. L.R. 116.3(A). In this case, the defendant made his first request for discovery well after this deadline, and after he had filed his motion to suppress evidence. At a conference before ths Court, the government indicated that it would not object to the defendant's filing of the first discovery motion even though it was untimely. The instant Motion, however, is later yet, coming well after the issue had been joined with respect to the defendant's first discovery motion. Accordingly, it should be denied.

II. **THE MOTION SHOULD BE DENIED ON THE MERITS**

A. **Legal Framework**

As argued in response to the defendant's first discovery motion, the Supreme Court has recognized that there is a presumption of validity with respect to an affidavit supporting a search warrant. Franks v. Delaware, 438 U.S. 154, 171 (1978). In order to obtain a hearing on whether a search warrant affidavit contains false information, a defendant must make a substantial preliminary showing that the affiant knowingly or recklessly included false information material to the finding of probable cause. See id. at 155-56. More specifically, the Court stated that, in order to show entitlement to an evidentiary

hearing as to whether a warrant affidavit contains deliberately or recklessly false statements,

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

438 U.S. at 171-72.

Implicit in the Court's treatment of the issue is the notion that a criminal defendant is not entitled automatically to discovery regarding matters contained in search warrant affidavits; otherwise, the fishing expedition that the Supreme Court foreclosed at the hearing stage would simply be pushed back to the discovery stage, and the presumption of validity of search warrants would have little force.

The defendant cites the First Circuit's opinion in United States v. Higgins, 995 F.2d 1 (1st Cir. 1993), in support of the Motion.  However, implicit in Higgins is the proposition that a

defendant seeking discovery in aid of a Franks motion must make some threshold showing that a search warrant affidavit contains false information and that the discovery sought would assist him in showing that. The issue in Higgins was whether the district court had erred in declining to require the government to disclose the identity of a confidential informant in camera. In holding that the court had not abused its considerable discretion in that regard, the First Circuit observed that the defendant had failed to articulate how in camera disclosure of the informant's identity would have enabled him to get a Franks hearing – that is, the defendant had failed to show how the information sought would have helped him to show that the search warrant affiant knowingly or recklessly included false information. Higgins, 995 F.2d at 4. In a footnote, the First Circuit also made clear that the defendant's motion for disclosure was "seriously inadequate in form" because the sole factual basis was conclusory statements in an attorney's affidavit – an indication that, even to get discovery in aid of a Franks motion, a defendant must make a preliminary showing based on reliable evidence that there is something specific to be gained. Id. n. 5. See also United States v. Williams, 143 F.R.D. 24 (D. Mass. 1992), in which the court required that a criminal defendant, before receiving discovery of the track record of confidential informants used to make a controlled buy and otherwise provide information

supporting a drug search warrant, must:

> . . . deny, via affidavit, specific facts attributed to [him] by informants . . . [and] . . . make some minimal showing of inconsistency on the face of the government's material which supports [an] assertion of deliberate falsehood or reckless disregard for the truth.

<u>Williams</u>, 143 F.R.D. at 25, quoting <u>United States v. Brian</u>, 507 F. Supp. 761, 766 (D.R.I. 1981).

The defendant argues that impeachment material regarding the CI and the law enforcement personnel is subject to automatic disclosure under Local Rule 116.2(B)(1)(b) as information casting doubt on the admissibility of evidence. Motion at 2. But this requirement is subject to the definition of exculpatory information provided at Local Rule 116.2(A)(2): "Exculpatory information includes, but may not be limited to, all information that is <u>material</u> and favorable to the accused because it tends to . . . [<u>inter alia</u>] [c]ast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief . . . " (emphasis added). Thus, the Local Rules do not require the government to disclose any and all information that may tend to cast doubt on the admissibility of evidence, but rather only such information as is <u>material</u>. As demonstrated below, information regarding the CI's reliability is not material, and it therefore

is not subject to disclosure under the Local Rules.[1]

B. **The Defendant Has Not Made an Adequate Threshold Showing**

Here, as is the case with his first discovery motion, the defendant has made neither the substantial preliminary showing

---

[1] Indeed, while the defendant refers to the information he seeks as "exculpatory evidence" and cites Brady v. Maryland, 373 U.S. 83 (1963), Motion at 2, 6, the government believes that any opportunity a defendant has for discovery in aid of a potential Franks motion is not governed by Brady at all. A number of courts have recognized that the due process trial concerns that Brady vindicates are significantly different from the Fourth Amendment issues addressed by Franks, and that Brady accordingly is not implicated in the Franks context. In Mays v. Dayton, 134 F.3d 809 (8th Cir. 1998), for example, the Eighth Circuit reversed a district court's denial of civil police defendants' motion for summary judgment in a civil rights lawsuit, in which the district court had relied, in part, on its determination that a genuine issue of material fact existed with respect to whether a search warrant affidavit failed to include exculpatory information in violation of Franks. In so doing, the Eighth Circuit observed that the district court, "[r]ather than apply Franks anlaysis, . . . apparently misconstruing the meaning of Franks, imputed the rationale of [Brady] into the warrant application process. This is clear error as the warrant process differs significantly from the trial process." 134 F.3d at 815. See also United States v. Colkley, 899 F.2d 297, 302 (4th Cir. 1990); O'Quinn v. Estelle, 574 F.2d 1208, 1209 (5th Cir. 1978)(dismissing under Stone v. Powell petition for writ of habeas corpus seeking, pursuant to Brady, identity of informants relied on in search warrant affidavit); Torres v. Irvin, 33 F. Supp. 2d 257, 265 (S.D.N.Y. 1998)(stating defendant cannot avoid Stone v. Powell by characterizing attack on search warrant as one based on Brady, and holding that challenge to search warrant affidavit governed by Franks); United States v. Shields, 783 F. Supp. 1058, 1075 (N.D. Ill. 1991). But see this Court's decision in Indelicato v. United States, 106 F. Supp. 2d 151, 157-58 (D. Mass. 2000)(analyzing, under both Brady and Franks, withholding identity of informant used in wiretap affidavit, without discussion of whether Brady applies); United States v. LaRouche Campaign, 695 F. Supp. 1290 (D. Mass. 1988)(finding that because undisclosed evidence insufficient for relief under Franks, not material within meaning of Brady, again without discussion of whether Brady applies).

entitling him to a <u>Franks</u> hearing nor the threshold showing contemplated by <u>Higgins</u> and <u>Franks</u> itself meriting the discovery he seeks.

The defendant disagrees, arguing that because the search warrant affidavit indicated that the defendant was seen operating two cars between January 18, 2004 and the date of the application, including a green Passat with plate number 15VP11, and because this plate number was not assigned to this vehicle until February 13, 2004, the affidavit contains a materially false statement.  Motion at 5-6.  As pointed out in the government's supplemental opposition to the defendant's first discovery motion, however, the plate number was only included in the affidavit as a means of identifying a car for which the police wanted a search warrant.  The fact that the car may initially have had a different registration number on it is wholly immaterial to whether probable cause existed as of the date of the search warrant application to search the defendant's apartment.

Indeed, as pointed out in the government's supplemental opposition to the defendant's first discovery motion, the omission of the earlier plate number not only is not materially misleading, but the inclusion would actually have contributed to a finding of probable cause.  Common sense dictates that drug dealers might well seek to mask their operations through use of

vehicles registered to others.  Inclusion of information that, mid-way through the surveillance of the defendant, the plate number of one of the cars he was using changed but he continued to drive it anyhow, would have been consistent with such a practice.

The defendant next takes issue with statements in the search warrant affidavit that, read literally, indicate that the affiant both watched the CI as he went to and from the controlled buy and watched the defendant as he did the same.  Motion at 6.  The defendant claims that this renders the affidavit materially misleading.  However, innocent errors in search warrant affidavits do not constitute intentional or reckless misstatements within the meaning of Franks.  Cf. United States v. Cochrane, 896 F.2d 635, 637-38 (1st Cir. 1990)(grammatical mishap in use of pronoun "he" to refer to informant rather than affiant neither reckless nor intentional).  Here, even a cursory examination of the search warrant affidavit reveals that the reference to the affiant as having observed the defendant leave his building and enter the Passat just prior to the controlled purchase was an inadvertent mistake, and that the detective intended the reference to be to one or both of the other New Bedford Police detectives identified as having taken up surveillance outside the defendant's building before the buy.  No advantage was gained through this inadvertent error.

The defendant also claims that he has made a threshold showing of material misstatements through the affidavit of Delbert Green.  Motion at 5.  But, as shown in the government's supplemental opposition to the defendant's first discovery motion, the Green affidavit contains demonstrably false information: the Registry records that the defendant himself cites in the Motion show that, contrary to his affidavit, Green did not purchase the Passat, but instead had it "given" to him.

In addition, the circumstances surrounding Green's purported "ownership" of the Passat are highly questionable.  As indicated in the previously-submitted affidavit of ATF Special Agent Sheila O'Hara, according to the paperwork, Angel Quinones, who "owned" the car before Green became the paper owner, made Green a gift of a car that just two months earlier he himself had bought for $4,000, already a suspicious set of circumstances.  Beyond that, however, Quinones has admitted that he bought the car for Jonathan Matos and never even had the keys to the car himself.  (Matos, as indicated in the government's supplemental opposition to the defendant's first discovery motion, is under indictment in this District for drug trafficking and firearms offenses.)  Matos later told Quinones that he had gotten rid of the Passat shortly after it was bought, and Quinones told SA O'Hara that he does not know what happened to it.  He made clear, however, that he does know he had nothing to do with the "gift" of the Passat to Green;

9

that he does not even know Green; and that the signatures on the Registry paperwork purporting to be his and reflecting this "gift" are not, in fact, his signatures.

Finally, the fact that Green retained "ownership" of the Passat for only approximately six weeks, and then purportedly was given yet another gift, this time of a Lincoln Navigator worth well over $10,000, creates yet additional questions about Green's connection to these vehicles.

Balanced against the inherent unlikelihood that two different people would simply give Green vehicles worth thousands of dollars is the inherent unlikelihood that the detectives would have fabricated seeing the defendant driving the Passat. Again, the reason the search warrant affiant was specific about having seen the defendant drive the Passat, and particularly about having seen him drive it so close in time to the search, was because the police wanted to search it. The only reason they wanted to search it was because the defendant was seen driving it. The notion that the police would have made up this detail, presumably picking at random Green's Passat as the vehicle they would say the defendant was driving, simply does not bear scrutiny.

In sum, given the many questions surrounding Green's purported ownership of the Passat, the affidavit fails to satisfy both the rigorous standard that must be met to entitle a

defendant to a Franks hearing and the threshold that must be met before a defendant should be permitted discovery in aid of a Franks motion.

**C.   AT A MINIMUM, THE COURT SHOULD HEAR FROM DELBERT GREEN**

As indicated in the government's supplemental opposition to the defendant's first discovery motion, the Court should require that Delbert Green appear and testify before deciding that the defendant has met either the threshold showing for Franks discovery or the showing necessary for a hearing.  The investigation described herein and in the government's previous filings raises significant questions regarding Green's relationship to the Passat that substantially undermines the allegations in his affidavit.

**D.   THE COURT SHOULD OTHERWISE DENY THE MOTION**

**Information Regarding the CI**

As discussed previously, the Local Rules speak in terms of disclosure of material information.  The search warrant affidavit recites that, among other investigative steps, the police used the CI to engage in a controlled buy of drugs from the defendant. The First Circuit, while declining to adopt a per se rule that controlled buys corroborate informants, has routinely so found in particular cases.  See, e.g., Khounsavanh, 113 F.3d at 286; United States v. Garcia, 983 F.2d 1160 (1st Cir. 1993).

Thus, assuming the existence of Giglio material regarding

the CI, the defendant cannot make a substantial preliminary showing both (1) that the detective recklessly omitted the information, and (2) "that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause," United States v. Buchanan, 167 F.3d 1207, 1210 (8th Cir. 1999). Here, probable cause manifestly existed regardless.

In analogous circumstances, in United States v. Paradis, 802 F.2d 553 (1st Cir. 1986), the defendant claimed that a search warrant affidavit omitted several material facts, including: (1) that the informant had charges pending in state court; (2) that a plea agreement had been entered into with the informant; and (3) that the informant had a lengthy criminal history and history of mental illness. Because, as is the case here with the CI's information, there was corroboration, the First Circuit, in upholding the denial of a Franks hearing, stated that the fact "that the informant had a history of illness, a criminal record, pending criminal charges, etc., would not have resulted in a lack of probable cause." 802 F.2d at 558.

Similarly, in United States v. Rumney, 867 F.2d 714 (1st Cir. 1989), the police obtained a warrant to search a robbery suspect's home based on information from an individual who twice denied knowing anything before he admitted driving the defendant to the robbery scene, and who also had a criminal history. The warrant affidavit omitted mention either of the denials or of the

criminal history. Even though, unlike in Paradis, there was no corroboration of the individual's reliability, the First Circuit upheld the district court's denial of a Franks hearing. Indeed, with respect to the criminal history, the First Circuit observed: "[I]t is probable that having a criminal history would explain in part why appellant asked [the informant] to participate in the robbery." 867 F.2d at 720.

The Eighth Circuit has similarly recognized that "a magistrate generally would not be misled by the alleged omissions of facts [regarding criminal history and plea agreements] . . . because informants frequently have criminal records and often supply information to the government pursuant to plea agreements." United States v. Flagg, 919 F.2d 499, 501 (8th Cir. 1990).

The defendant cites United states v. Vigeant, 176 F.3d 565 (1st Cir. 1999), in support of an argument that impeachment material regarding a CI used in a search warrant affidavit should be disclosed because it may undercut a good faith argument under United States v. Leon, 468 U.S. 897 (1984); see Motion at 4-5. But in Vigeant, a case in which a search warrant was obtained for bank records purportedly evincing laundering of drug proceeds, the affiant, in addition to failing to apprise the issuing judge of an informant's criminal history, recent plea agreement, and general unreliability, omitted certain facts inconsistent with a

13

finding that the subject had engaged in money laundering at all – for example and significantly, that the subject had filed a CTR as part of the banking transaction in which he purportedly was laundering money. Vigeant, 176 F.3d at 573. Indeed, the First Circuit explicitly stated: "In holding today that the good faith exception does not apply, we emphasize that our holding is limited to the facts of this particular case, where we have determined that exclusion would serve as an effective deterrent. [Citing Leon, 468 U.S. at 918]. We certainly do not hold that every unexplained exculpatory material omission in an affidavit necessarily warrants a finding of lack of good faith." 176 F.3d at 575 (footnote omitted). Here, impeachment information regarding the CI would not have been material. Indeed, no magistrate would have been surprised to learn that an informant who admitted to purchasing drugs on his own, who was in a position to continue to purchase drugs, and who was willing to work with the police to the point of making a controlled buy, had used drugs, had a criminal record, and/or had some reason beyond pure altruism to assist the police in obtaining evidence against a dangerous defendant. See Flagg, 919 F.2d at 501.

Moreover, some of the discovery sought could potentially serve to identify the CI. Under Rovario v. United States, 353 U.S. 53 (1957), the government has a privilege to withhold from disclosure the identity of informants who are not percipient

witnesses to the crimes charged or whose testimony is not otherwise necessary to the defense.  Here, the search warrant affidavit was intentionally vague regarding the time at which the controlled buy was performed and the amount of the purchase in order to protect the identity of the CI.  Disclosure of this information to the defendant would serve potentially to identify a CI whose identity otherwise is privileged from disclosure.

### Information Regarding Law Enforcement Officers

The defendant has provided the Court with no basis for according him discovery of impeachment material on the law enforcement officers providing information in connection with the search warrant affidavit.  The two cases he cites do not remotely stand for the proposition that he is entitled to this discovery.

Henthorn, for example, was a case in which the district court had declined to order a review of the personnel files of law enforcement witnesses who would be trial witnesses.  United States v. Henthorn, 931 F.2d 29, 30 (9th Cir. 1991).  The Ninth Circuit remanded the case to the district court to conduct an in camera review of the files, and ultimately, in an unpublished opinion, affirmed the conviction.  See United States v. Henthorn, 985 F.2d 575, 1992 WL 387633 (9th Cir. 1992).  So the case had to do with trial witnesses, not participants in an investigation.

Similarly, United States v. Brooks, 966 F.2d 1500 (D.C. Cir. 1992), involved a retrial of a case in which, between the two

trials, a key police witness had been killed with her own service revolver.  The defendant had requested that records concerning any investigation into the officer's death be reviewed for potential impeachment material.  A particular file was inadvertently not searched, and the officer's previous trial testimony was read into the record.  As in <u>Henthorn</u>, the D.C. Circuit did not reverse under these circumstances but instead remanded the matter to the district court for the <u>government</u> to review the files.  As in <u>Henthorn</u>, the D.C. Circuit ultimately affirmed the conviction in an unpublished opinion.  <u>See</u> <u>United States v. Brooks</u>, 55 F.3d 684, 1995 WL 310032 (D.C. Cir. 1995). And, of most relevance for these purposes, as in <u>Henthorn</u>, the issue concerned review of records relating to a <u>trial</u> <u>witness</u>.

The defendant has cited no case in which discovery was accorded under the circumstances presented here.  Accordingly, this prong of the Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's Motion.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: <u>/s/Robert E. Richardson</u>
Robert E. Richardson
Assistant U.S. Attorney

16

CERTIFICATE OF SERVICE

Suffolk, ss.                                    Boston, Massachusetts
                                                October 11, 2005

    I hereby certify that I caused a true copy of the foregoing to be served by electronic filing upon counsel for the defendant, Frank D. Camera, Esq., 56 N. Main Street, Suite 321, Fall River, MA 02720.

                                          /s/Robert E. Richardson
                                          Robert E. Richardson
                                          Assistant U.S. Attorney