UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.                                                    CRIMINAL NO. 04-10235-MLW

CORY HUBBARD


### DEFENDANT CORY HUBBARD'S SENTENCING MEMORANDUM

Cory Hubbard appeared before this Court on March 8, 2006 and pleaded guilty to four counts on a five-count indictment that charged the Defendant with felon in possession of a firearm (18 U.S.C. sec. 922(g)(1) and possession with intent to distribute controlled substances in violation of 21 U.S.C. sec. 841 (a)(1). Mr. Hubbard was deemed to be a career offender by virtue of at least two qualifying prior convictions. Thus, the guideline range is calculated at 188-235 months.

This sentencing memorandum is intended to assist the Court in fashioning the most appropriate sentence for Mr. Hubbard in accordance with the purposes of the Sentencing Reform Act, 18 U.S.C. sec. 3553(a), and the evolution of case in law in the wake of Blakely v. Washington, 124 S.Ct. 2521 (2004) and United States v. Booker, 125 S.Ct. 738 (2005). Specifically, Mr. Hubbard requests this Court sentence him to a period of confinement of 188 months, followed by four years of supervised release.

Under the post-*Booker* advisory regime, sentencing courts are still required to consider the guideline range, but they must also "give equal consideration to sentencing factors such as just punishment, deterrence, incapacitation, rehabilitation, and the need for the sentence to reflect the nature and circumstances of the offense and the history and characteristics of the defendant." United States v. Pirani, 406 F.3d 543, 565 (8th. Cir.

2005).  In sec. 3553(a), Congress enjoined sentencing courts to "impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in paragraph (2)," which in turn sets forth the four traditional purposes of imposing a sentence: (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" [retribution]; (2) "to afford adequate deterrence to criminal conduct" [deterrence]; (3) "to protect the public from further crimes of the defendant" [incapacitation]; and (4) "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner" [reformation].  In addition, that subsection requires sentencing courts to "consider" six other factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the kinds of sentences available"; (3) the "kinds of sentence and the sentencing range established by the sentencing guidelines"; (4) "pertinent policy statements" issued by the Federal Sentencing Commission; (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (6) "the need to provide restitution to any victims."

*GUIDELINE CALCULATIONS*

In the Pre-Sentence Report (PSR), the Probation Office has correctly determined that, not withstanding the career offender provision, the Total Offense Level for the defendant would be 27, Criminal History Category VI.  As appropriately noted in the PSR, the defendant has the requisite number of predicate convictions that qualify him under the career offender provision.  Mr. Hubbard's guideline range is thus 188-235 months.  The defendant does not dispute this calculation.  Nonetheless, the court has authority to depart from a career offender provision if one or both of the two factors

discussed at sec.4B1.1 are present, i.e., (1) if reliable information indicates that the criminal history category substantially over-represents the seriousness of the defendant's criminal history or (2) the likelihood that the defendant will commit future crimes.  See sec.4A1.3 (b)(1).  Most circuits have held that downward departures under sec. 4A1.3 may be considered for career offenders if that category over-represents the seriousness of defendant's criminal history or the likelihood that the defendant will commit future crimes.  See U.S. v. Lindia, 82 F.3d 1154, 1165 (1st. Cir.1996); U.S. v. Webb, 139 F.3d 1390, 1395 (11th Cir.1998); U.S. v. Shoupe, 35 F.3d 835, 838-39 (3rd.Cir. 1994); U.S. v. Beckham, 968 F.2d 47, 54-55 D.C. Cir. 1992); U.S. v. Adkins, 937 F.2d 947, 952 (4th Cir. 1991).

Despite the government and defendant agreeing not to seek a departure from the sentencing range established by the United States Sentencing Guideline (See Plea Agreement), Mr. Hubbard requests that this court consider the factors that would otherwise warrant a departure in imposing a sentence of 188 months.

Mr. Hubbard cannot refute his past criminal history.  However, upon careful review, it can be seen that when considering his total criminal history points, only five of the total fifteen points are for serious drug offenses.  The balance of the fifteen points is for motor vehicle offenses and a straight possession of class A.  Hubbard's motor vehicle offenses were mainly for driving while his license was suspended.  To treat Mr. Hubbard as if he was an offender with a criminal history filled with serious violent offenses would be in contravention of the purpose of the criminal history computations which is to predict recidivism and reflect culpability.  Accordingly, if the Court was to disregard his motor vehicle offenses, Mr. Hubbard would have a criminal history of five (ten points).  Thus, with a criminal history of five and an offense level of thirty-one, the sentencing

range would be 168-210.

To be sure, Mr. Hubbard does not seek to excuse his past criminal behavior; he does wish that the Court consider the circumstances that attributed to his past.  First, the "home" in which he was reared was drug-infested.  Cory's mother has been a drug-dependent person for most if not all of his life. Mr. Hubbard has never had a male role model in his life.  In fact, his mother was involved in a relationship with a man who regularly beat Cory.  This man was eventually shot and killed due to a drug-related incident.  In this altercation, Cory's mother was also shot.  Given the milieu in which the defendant was reared, it is unsurprising that as a teenager and young adult, he had little respect for authority.  This is the framework for the defendant's criminal life.

### *HUBBARD'S HISTORY AND CHARACTERISTICS MILITATE IN FAVOR OF A LOWER SENTENCE*

Hubbard urges the Court to read the letters from family and friends that are attached to this memorandum.  Together, these letters demonstrate that Hubbard's history and characteristics merit a sentence at the low-end of the guideline range.

### *A SENTENCE AT THE LOW-END OF THE GUIDLEINE RANGE IS MORE THAN SUFFICIENT TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT*

If the Court were to sentence Hubbard to 188 months of imprisonment, he would be in his early forties when he is released from custody.  He has spent approximately two years in custody for the instant offense.  He and his family have also been put through the

stress and anxiety that accompanies such a traumatic event such as this.  Under the

circumstances, a sentence of fifteen years would be more than sufficient "to afford

adequate deterrence to criminal conduct."

CONCLUSION

For all the reasons stated above, Hubbard requests that this Court impose a

sentence of 188 months.

> Cory Hubbard,
> By his attorney,
>
>
> /s/ Frank D. Camera
> Frank D. Camera
> B.B.O. No. 635930

Dated: May 30, 2006

CERTIFICATE OF SERVICE

I hereby certify that today a true copy of the above sentencing memorandum was
sent via electronic filing to all parties of record on this 30th day of May 2006.

> /s/ Frank D. Camera
> Frank D. Camera