**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CORY HUBBARD,<br><br>Defendant. | ) | No. 1:04-cr-10235-JEK |

## MEMORANDUM AND ORDER

**KOBICK, J.**

This is a motion under 28 U.S.C. § 2255 to vacate certain criminal convictions. In March 2006, defendant Cory Hubbard pleaded guilty to being a felon in possession of a firearm and ammunition, possessing with intent to distribute more than five grams of cocaine base, and possessing with intent to distribute cocaine and marijuana. In accordance with the parties' plea agreement, the government dismissed a count charging Hubbard with possessing a firearm in furtherance of a drug trafficking crime. Hubbard was sentenced in June 2006 to 188 months in prison followed by four years of supervised release. In January 2013, he filed a *pro se* motion under 28 U.S.C. § 2255 to vacate his guilty plea to certain offenses. He and his counsel later moved, separately, to amend that motion.

Hubbard's section 2255 motion, as amended, seeks to set aside his guilty plea on the drug offenses because of "two former state forensic chemists, Annie Dookhan and Sonja Farak, who tampered with evidence, falsified drug results, and committed perjury in state court drug cases beginning in about 2004." *Cotto v. Campbell*, 126 F.4th 761, 765 (1st Cir. 2025). Since those chemists were involved in testing the drugs at issue in this case and Hubbard was unaware of their misconduct when he pleaded guilty, Hubbard argues, his guilty plea on the drug counts should be

vacated. Vacatur is unwarranted, however, because Hubbard fails to demonstrate that there was a reasonable probability that he would not have pleaded guilty had he known of Dookhan's and Farak's malfeasance. His section 2255 motion will therefore be denied.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and focuses on the relevant procedural history. In February 2004, pursuant to a search warrant, state police seized from Hubbard's apartment a semi-automatic pistol loaded with eight rounds of ammunition, two police scanners, $10,552 in cash, an apparent drug ledger, two digital scales, and a can of acetone. ECF 2, ¶ 8. They also seized what turned out to be one bag weighing 21.54 grams and nine bags weighing 6.98 grams containing cocaine, three bags weighing 8.99 grams and five bags weighing 14.53 grams containing cocaine base, and seventeen bags of marijuana weighing approximately one pound. *Id.* Before executing that warrant, the police physically surveilled Hubbard, and a confidential informant made a controlled purchase of cocaine from him. *Id.* ¶¶ 6-7. In April 2004, Dookhan tested a 0.48-gram bag of cocaine, Farak alone tested the marijuana, and Farak along with another chemist, Elisabeth O'Brien, tested the other bags. ECF 119, at 3-4.

Hubbard was charged by indictment in August 2004 with five counts: felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count I); possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count II); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count III); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count IV); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count V). ECF 8. After the parties reached a plea agreement, Hubbard pleaded guilty in March 2006 to Counts I through IV, and the government dismissed Count V in

June 2006. ECF 73, 79. Also in June 2006, Hubbard was sentenced as a career offender to 188 months in prison followed by 4 years of supervised release. ECF 78, 81.

In January 2013, Hubbard filed a *pro se* motion under 28 U.S.C. § 2255 seeking to vacate Counts II, III, and IV of his guilty plea, based on misconduct by Dookhan, and to be resentenced only on Count I. ECF 114. An investigation from August 2012 had revealed that Dookhan "falsely certified drug-test results" at a state testing laboratory, the William A. Hinton State Laboratory Institute, by "purposely contaminat[ing] certain samples to ensure that they would test positive for drugs" and "'dry-labb[ing]' (identif[ying] by sight, rather than by chemical test) other specimens." *Wilkins v. United States*, 754 F.3d 24, 26-27 (1st Cir. 2014); *see Bridgeman v. Dist. Att'y for Suffolk Dist.*, 476 Mass. 298, 302-03 (2017). The government opposed that motion in March 2013, and Hubbard filed a reply brief in April 2013. ECF 119, 120.

Also in April 2013, Hubbard's counsel moved to amend the section 2255 motion to add transgressions by Farak. ECF 122. While working at a different state testing facility, the State Laboratory Institute at the University of Massachusetts, Farak "stole drugs submitted to the lab for testing for her own use, consumed drug 'standards' that are required for testing, and manipulated evidence and the lab's computer system to conceal her actions." *Comm. for Pub. Couns. Servs. v. Attorney General*, 480 Mass. 700, 701 (2018); *see* ECF 122-1. This case was subsequently stayed from 2013 through June 2016 pending the Commonwealth's further investigation of Dookhan's and Farak's malfeasance. *See* ECF 127, 129, 146, 152. In January 2018, Hubbard filed a *pro se* motion to amend his initial section 2255 motion by supplementing his arguments regarding Dookhan and Farak. ECF 158, 159. The government did not oppose either motion to amend.

The Court failed to rule on Hubbard's section 2255 motion or the pending motions to amend before Hubbard completed his term of imprisonment. While on supervised release,

Hubbard was alleged to have violated certain conditions of release. ECF 208. On January 30, 2023, the Court held a final revocation hearing. ECF 209. Based on Hubbard's admission to one violation, the Court revoked his supervised release and sentenced him to time served (224 days), to be followed by three years of supervised release. ECF 209, 212. At this point, Hubbard's section 2255 motion and motions to amend remained pending.

In April 2024, Hubbard was again alleged to have violated certain conditions of supervised release. ECF 213. The case was reassigned to this session in November 2025. ECF 236. At the parties' request, the Court scheduled a final revocation hearing in January 2026. ECF 239, 246. The parties asked that the Court proceed with the revocation hearing, notwithstanding the pending motions, and address those motions after imposing sentence. ECF 246. After Hubbard stipulated to violating three conditions, the Court revoked his supervised release again and sentenced him to 33 months in prison with no additional term of supervised release. ECF 246, 247. Following the sentencing, the parties filed a further status report and memoranda regarding the pending motions. ECF 248, 251.

**DISCUSSION**

Section 2255 provides that a "prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Even though Hubbard completed his initial term of imprisonment before this Court resolved his section 2255 motion, the parties argue, and the Court agrees, that his section 2255 motion is not moot. That is so because he is currently in custody pursuant to a revocation sentence imposed by this Court, and to the extent the Court were to grant his section 2255 motion, he could

be entitled to a resentencing that could affect his revocation sentence. The Court will therefore proceed to consider his section 2255 motion to vacate his guilty plea on the drug counts. It will also grant the motions to amend filed by Hubbard and his counsel and treat those amendments—including the additional allegations about Farak—as part of his section 2255 motion.

In general, "'a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" *Wilkins*, 754 F.3d at 28 (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). A defendant may, however, "collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." *Ferrara v. United States*, 456 F.3d 278, 289 (1st Cir. 2006); *see* Fed. R. Crim. P. 11(e). To prevail on such an argument in a motion filed under section 2255, the defendant must show that (1) "'some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea'" and (2) "'the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.'" *United States v. Scott*, 877 F.3d 30, 38 (1st Cir. 2017) (quoting *Ferrara*, 456 F.3d at 290).

In light of the revelations about Dookhan's and Farak's misconduct, the government does not meaningfully dispute that the first element has been satisfied. *See Wilkins*, 754 F.3d at 28 (declining to address the first element in a case involving Dookhan's misconduct). The Court therefore turns to the second element, which requires Hubbard to show "a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citation modified). This probability must be "sufficient to undermine confidence in a belief that the petitioner would have entered a plea." *Ferrara*, 456 F.3d at 294. The Court assesses probability based "'in large part on a prediction whether the [newly disclosed] evidence likely

would have changed the outcome of a trial.'" *Wilkins*, 754 F.3d at 28 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). It "must consider the totality of the circumstances surrounding the plea" and may examine "whether the sequestered evidence would have detracted from the factual basis used to support the plea." *Ferrara*, 456 F.3d at 290, 294. The Court's task requires "an objective analysis, informed by the effect, if any, that [Farak's and] Dookhan's misconduct was likely to have had on [Hubbard's] chances at trial." *United States v. Merritt*, 755 F.3d 6, 10 (1st Cir. 2014).

Based on the totality of the circumstances, Hubbard has failed to establish a reasonable probability that he would not have pleaded guilty had he known about the transgressions of Dookhan and Farak. There was "powerful circumstantial evidence," beyond those chemists' drug certifications, that Hubbard was engaged in illicit drug activity. *Wilkins*, 754 F.3d at 29. Hubbard does not dispute that a substance he sold to a confidential informant, during a controlled purchase in February 2004, field-tested positive for cocaine. ECF 2, ¶ 7; ECF 30-2, at 6. Nor does he contest the physical surveillance evidence from January 2004, which shows him meeting briefly with various people in different locations in a manner "consistent with the operation of a drug delivery service." ECF 2, ¶ 6; *see* ECF 30-2, at 4-5; *United States v. Bravo*, 350 F. Supp. 3d 16, 23 (D. Mass. 2018) (denying section 2255 relief where defendants alleged Dookhan misconduct but did not challenge the physical surveillance evidence or a field test revealing cocaine).

Hubbard instead challenges Dookhan's and Farak's involvement in testing the numerous bags from his apartment containing substances that appeared to be cocaine, cocaine base, and marijuana. Those bags were found in a small opening over a kitchen cabinet, under sofa cushions in the living room, and in drop-ceiling tiles in the bathroom. ECF 2, ¶ 8; ECF 119, at 2-3. The presence of these individual bags, and their storage in hidden locations, is indicative of illegal drug distribution. *See United States v. Mendoza-Maisonet*, 962 F.3d 1, 14 (1st Cir. 2020) (jury "could

infer from the number of individual packages that the drugs were intended for distribution rather than for personal use"); *United States v. Allen*, 990 F.2d 667, 670 (1st Cir. 1993) (constructive possession established through "a defendant's ownership or control over the premises in which the contraband is hidden"). So, too, are the other items recovered by the police during the search, including a loaded firearm, over $10,000 in cash, digital scales, acetone, and a drug ledger. *See United States v. Basilici*, 138 F.4th 590, 599 (1st Cir. 2025) ("Firearms are common tools of the drug trade." (citation modified)); *United States v. Burgos*, 254 F.3d 8, 15 (1st Cir. 2001) ("Evidence of large sums of unexplained cash is relevant to demonstrating an individual's involvement in illegal drug activities."); *United States v. Echeverri*, 982 F.2d 675, 679 (1st Cir. 1993) ("a measuring scale" and "a drug ledger" support a drug conspiracy conviction); *United States v. Ocampo*, 964 F.2d 80, 82 (1st Cir. 1992) (acetone is "used in a process for diluting cocaine").

Hubbard also pleaded guilty after learning of the evidence against him, and there is no indication in the record or his briefs that he has ever claimed to be innocent. *See* ECF 73; ECF 120, at 11 (Hubbard arguing only that the chemists' misconduct "would place into question the results of any forensic testing conducted"). His admission of guilt "is entitled to significant (albeit not dispositive) weight," particularly because he "neither attempts to explain it away nor makes any assertion of factual innocence." *Wilkins*, 754 F.3d at 30; *see Rosario v. United States*, 389 F. Supp. 3d 122, 133 n.13 (D. Mass. 2019) (defendant's questioning of Dookhan's test results went to "the sufficiency of the Government's case against him and not to whether he [was] factually innocent"). And Hubbard received a significant benefit in connection with his guilty plea—namely, the government's agreement to dismiss Count V, which charged him with possession of a firearm in furtherance of a drug trafficking crime, in violation 18 U.S.C. § 924(c)(1)(A), and threatened a

five-year mandatory minimum sentence that could not run concurrently with the sentence on his drug offenses. *See* 18 U.S.C. §§ 924(c)(1)(A)(i), (D)(ii).

In light of the strong circumstantial evidence of Hubbard's drug offenses, the significant benefit he received for pleading guilty, and the absence of any claim of actual innocence with respect to the drug offenses, Hubbard has not demonstrated that he would have refused to plead guilty and chosen to go to trial had he known about Dookhan's and Farak's malfeasance. *See United States v. Fortes*, No. 04-cr-10196-GAO, 2016 WL 8692835, at *4-5 (D. Mass. Sept. 30, 2016) (concluding the same in section 2255 motion alleging misconduct by both Dookhan and Farak). By failing to show that knowledge of either Dookhan's or Farak's misconduct would have been material to his decision to plead guilty, Hubbard has not made the necessary showing that his guilty plea was involuntary, and his section 2255 motion must be denied.

Hubbard separately argues in his January 2018 pleading that the government violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the misconduct of Dookhan and Farak before he pleaded guilty. *See* ECF 159, at 4-5. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. But in *United States v. Ruiz*, the Supreme Court later concluded that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." 536 U.S. 622, 633 (2002). So even assuming the prosecutors in this case were aware of Dookhan's and Farak's transgressions in 2006, Hubbard "was not entitled to receive any impeachment evidence prior to pleading guilty." *Collins v. Bouffard*, No. 15-1160, 2018 WL 3237488, at *1 (1st Cir. Jan. 3, 2018); *see United States v. Mathur*, 624 F.3d 498, 507 (1st Cir.

2010) ("[W]hen a defendant chooses to admit his guilt, *Brady* concerns subside."). Hubbard's *Brady* argument therefore fails. *See Bravo*, 350 F. Supp. 3d at 24 (*Brady* claims by defendants who pleaded guilty were "not cognizable").

**CONCLUSIONS AND ORDERS**

For the foregoing reasons, Hubbard's motions to amend his motion under 28 U.S.C. § 2255, ECF 122 and 158, are GRANTED, and his motion to vacate his guilty plea, ECF 114, is DENIED. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Hubbard has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: November 23, 2026